IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS J. SALGADO | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 11-CV-962 |

**MEMORANDUM**

J. WILLIAM DITTER, JR., Sr. J                                                        August 8, 2011

      Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 8), defendant's response, and the reply thereto (Doc. Nos. 10 & 11), the court makes the following findings and reaches the following conclusions:

      1.    On September 26, 2003, Luis J. Salgado ("Salgado") protectively filed applications for disabled adult child's benefits ("DAC") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, alleging an onset date of April 15, 2003.[1] (Tr. 160-62). After having his claim denied throughout the administrative process, culminating in the Appeals Council declining to assume jurisdiction over an adverse opinion dated August 26, 2004, Salgado filed his complaint in this court. (Tr. 5-7; 15-24). The court remanded the action in an opinion dated August 13, 2007. (Tr. 245-48). After a supplemental administrative hearing on October 16, 2009 and a second adverse opinion dated April 22, 2010 (over which the Appeals Council again declined to assume jurisdiction), Salgado filed a new complaint in this court on February 9, 2011. (Tr. 227-36; 515-552; Doc. No. 1).

      2.    In his April 22, 2010 decision, the ALJ concluded, *inter alia*, that: (1) Salgado had severe asthma, depression, anxiety, attention deficit hyperactivity disorder, learning disorder, personality disorder, and bipolar disorder; (2) his impairments did not meet or equal a Listing; (3) he had the RFC to perform a limited range of light work; (4) he could perform work existing in significant numbers in the national economy; and (5) he was not disabled. (Tr. 229, Finding 3; 231, Findings 4 & 5; 234, Finding 10; 236, Finding 11).

      3.    This Court has plenary review of legal issues, but it reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial

---

[1] Salgado filed a subsequent claim dated January 4, 2006, which has been associated with this claim. (Tr. 308-11).

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  It is more than a mere scintilla but may be less than a preponderance.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).   If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

    4. Salgado raises several arguments in which he primarily alleges that the ALJ failed to properly credit the opinions of his treating physicians, correct the errors found in the previous ALJ decision, or properly consider his impairments in combination.  These arguments are addressed below.  However, upon independent consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

    A. First, Salgado argues that the ALJ incorrectly discounted the opinions of four medical sources and did not properly support his decision to do so.  The ALJ concluded that the opinions of: (1) Salgado's treating psychiatrist Dr. Lorinda Berger and psychotherapist Andrea Borak; (2) non-examining physician Dr. Ronald Refice; (3) consultative examiner Dr. Loren Laviolette; and (4) psychotherapist Katie Fogg, were not entitled to significant probative weight. (Tr. 90-94; 141-44; 146-47; 148-56; 232-34; 368-71).  The ALJ explained, *inter alia*,[2] that the opinions relating extreme mental limitations were not supported by Salgado's long term clinical history, his own reported functioning, or the therapy records of his time spent incarcerated and of his time spent hospitalized.  (Tr. 230-34; 312-16; 409-443; 495-514).  For example, the ALJ discussed that, in certain notes from the Girard Medical Center, where Dr. Berger and Ms. Borak treated Salgado, Salgado denied concentration problems, reported enjoyment from being with friends, indicated that his depression was decreasing, and described his energy and appetite as being "good." (Tr. 230).  Likewise, the ALJ highlighted notes from the Mt. Tom City Clinic, where he was seen by Ms. Fogg, showing several benign mental status examinations and GAF scores of 65 and 68 (GAF scores of 61 to 70 indicate only mild symptoms). (Id.).  In light of Salgado's history of marijuana abuse and non-compliance with medication[3], the ALJ found Salgado's time spent incarcerated and hospitalized, where he

---

[2] For all of these opinions, the ALJ was also concerned that they had been "solicited solely to accommodate" Salgado's application, and that the doctors "may have 'found' what [they were] told to look for." (Tr. 232 & 233).  I conclude that this is an illegitimate reason to discount the opinion of a medical source as it borders on a rejection based on prohibited lay opinion or speculation.  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  However, because the ALJ included other legitimate reasons for not relying on these sources, this error is not cause for a remand.  See Rodriguez v. Astrue, 694 F. Supp.2d 36, 44-45 (D. Mass. 2010).

[3] The record shows that Salgado often was not compliant with his medications, even thought he told his doctors that he was, and that he habitually used marijuana.  See e.g. (Tr. 91; 380; 390; 392; 446; 495, 497).

was drug-free and on his medication, especially illuminating. (Tr. 230-31). The ALJ noted that during his incarceration, Salgado showed no evidence of psychosis or suicidal ideation and that during his hospitalization, Salgado had a benign mental status examination, a significant improvement in mood, and a discharge GAF score of 60. (Id.). Additionally, the ALJ declined to give great weight to Dr. Laviolette's report because it was based on a one time examination during which Salgado was described as being deceptive, and noted that Dr. Refice erroneously considered evidence from outside the relevant period of time. (Tr. 90-92; 232-33). Regarding Salgado's own reported functioning, the ALJ noted, *inter alia*, that he was able to take classes from 9:00 a.m. to 2:00 p.m. and, afterwards, go to the library to read books and use the computer and that, in general, he loved to play computer games. (Tr. 233-34).

When a conflict in the evidence exists, the ALJ may choose whom to credit but the ALJ must give reasons for his choices. Plummer, 186 F.3d at 429. Similarly, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). After having thoroughly reviewed the record, I conclude that, while the ALJ's decision to discount the opinions of these four sources certainly is not the only rational conclusion one could draw from the evidence, it is nonetheless supported by substantial medical evidence, as outlined above, and the ALJ met his legal obligation to explain his reasoning. See Hartranft, 181 F.3d at 360 (holding that if a conclusion of the ALJ is supported by substantial evidence, the court may not set aside the ALJ's decision even if it would have decided the factual inquiry differently). Therefore, Salgado's claim to the contrary must fail.

B.  Second, Salgado suggests that the ALJ failed to properly comply with this court's first opinion remanding the case. In that August 13, 2007 opinion, Judge Reed was concerned that, since the record was not well developed and the original ALJ rejected every medical opinion therein, it was unclear upon what evidence her conclusions rested. (Tr. 246-47). Because of that remand, the record has now been fully developed. Salgado specifically argues that the new ALJ failed to review GAF scores of 50 from Dr. Berger, which Judge Reed had ordered be reviewed on remand. While the ALJ did not specifically mention Dr. Berger's GAF assessments, he did discuss Dr. Berger's opinions, as reviewed above, and referenced many other GAF scores ranging from 35 to 68 from Dr. Laviolette, Mt. Tom City Clinic, Nobel Hospital, and a consultative examiner. (Tr. 229-233). Therefore, I conclude that the ALJ adequately complied with Judge Reed's August 13, 2007 opinion and order remanding the action.

C.  Third, Salgado contends that the ALJ did not satisfactorily consider his impairments in combination at step three of the sequential analysis. In Burnett v. Comm., 220 F.3d 112 (3d Cir. 2000), the Third Circuit concluded that, in order for a court to be able to conduct a meaningful judicial review of a step three determination, the ALJ must provide a sufficient explanation of his or her reasoning. Burnett, 220 F.3d at 119-20. In that case, the Third Circuit found that the ALJ failed to meet this requirement by merely making a bald conclusion that the claimant's impairments, in combination, did not meet or equal a listing. Id.; Poulos v. Comm., 474 F.3d 88, 93 (3d Cir. 2007) (concluding that "[a]n ALJ must provide a

sufficient framework of reasoning for a court to conduct 'meaningful judicial review' of the ALJ's decision"). In Poulos, the Third Circuit further concluded that an ALJ could meet his or her third step burden by "reviewing all of the objective medical evidence . . . and explicitly stating which Listings he was considering." Poulos, 474 F.3d at 93.

As summarized above, the ALJ reviewed the medical evidence of mental impairments and then determined that Salgado did not have a combination of impairments that met or equaled a Listing. (Tr. 229-231). While the ALJ did not "explicitly stat[e] which Listings he was considering", he gave his reasoning for rejecting both the opinion of Dr. Berger that Salgado met Listing 12.04 and the opinion of Dr. Refice that he met Listings 12.04, 12.08, 12.09, and 112.11. (Tr. 146; 150; 232-34). I conclude that since it is evident which Listings the ALJ considered when he made his step three determination, the ALJ's failure to explicitly recite them in his decision is cured. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case); Brown v. Astrue, — F.3d —, 2011 WL 2624439, 2 (3d Cir., July 6, 2011). As a result, I find that the ALJ sufficiently explained his step three conclusion that the combined effects of Salgado's impairments did not meet or equal a listed impairment.

5. After carefully reviewing all of the arguments[4] and evidence, I find that the ALJ's conclusion that Salgado was not disabled was legally sufficient and supported by substantial evidence. Therefore, Salgado's request for relief must be denied and the decision must be affirmed.

An appropriate Order follows.

---

[4] Salgado raises one other argument: After the hearing, the ALJ decided to send Salgado for one more psychological examination. The ALJ was under the impression that he could only send 25 pages of Salgado's file to the consultative examiner. Salgado claims that he was prejudiced because the ALJ failed to provide his entire file to the CE. See (Tr. 550-552). The ALJ was not required to order another examination, but having ordered one, it was his duty to make sure the CE received any relevant medical background information. POMS DI 29501.010. Although the entire file presumably was not sent to the CE, there is no indication that the CE was crippled by a lack of relevant background information on Salgado. (Tr. 446-50). Therefore, I find no prejudice to Salgado.